**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BONNIE JEAN FLERLAGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15-cv-11794 |
| v. ) | |
| ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting ) | Susan E. Cox |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ORDER

Plaintiff Bonnie Jean Flerlage ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Defendant," or the "Commissioner") to deny his application for disability benefits. The parties have filed cross-motions for summary judgment. For the following reasons, Plaintiff's motion is granted [dkt. 22], the Commissioner's motion is denied [dkt. 30], and the case is remanded for further proceedings consistent with this opinion.

## STATEMENT

**I.  Procedural History**

On January 7, 2013, Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff's alleged disability onset date at the time of her application was March 31, 2011. Her initial application was denied on August 14, 2013, and again at the reconsideration stage on March 12, 2014. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on March 27, 2014, which was held on November 10, 2014. At the hearing,

---
[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

Plaintiff, through her attorney, voluntarily withdrew her request for a hearing as it pertained to the DIB claims, leaving on the SSI claims for the hearing before the ALJ. At the hearing, testimony was offered from the Plaintiff and a Vocational Expert ("VE"). On January 15, 2015, the ALJ issued a written decision denying Plaintiff's application for DIB. The Appeals Council ("AC") denied review on October 27, 2015, thereby rendering the ALJ's decision as the final decision of the agency. (R. 1-3); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994).

## II. Medical Records

Plaintiff's has had ongoing problems with her neck and back since 2005, when she was involved in a motor vehicle accident. As a result of injuries sustained in that accident, Plaintiff underwent surgery to perform an anterior cervical discectomy and fusion, including placing a titanium plate and screws in Plaintiff's neck. (R. 415, 1017). In February 2011, Plaintiff was involved in another motor vehicle accident, and reported increased neck and back pain. She began treating with Dr. Dalip Pelinkovic, M.D., at M&M Orthopedics shortly after the second accident, with complaints of headache, neck pain, bilateral trapezius pain, left interscapular pain, lower back pain, right buttock pain, right posterior leg pain, numbness in her arms and hands, and right leg pain. (R. 402.) Plaintiff treated with Dr. Pelinkovic for approximately two months; at the end of her treatment, Dr. Pelinokovic recommended that Plaintiff continue with non-operative treatment, including physical therapy.

In August 2011, Plaintiff was involved in a physical altercation, and presented to the emergency room at Edwards Hospital. She complained of neck pain, among other issues. A CT scan of the cervical spine showed that Plaintiff had a plate and screw with graft material at C5-C6, and a disc bulge compressing the thecal sac at C3-C4. (R. at 428.) Plaintiff was diagnosed with a cervical strain and discharged from the hospital that day. (R. at 417.)

In June 2012, Plaintiff's primary care physician, Dr. Sean Rardin, M.D., referred Plaintiff to a specialist in neurosurgery and spine surgery, Dr. Michael H. Rabin, M.D. Plaintiff reported to the specialist that her lower back pain and neck pain increased following her 2011 altercation, and that she started to have tingling associated with that pain. (R. at 431.) Dr. Rabin reviewed several MRIs of Plaintiff's spine that were taken in May 2012, and noted that she had a "large disk herniation on the left at C5-6," "segmental failure above the level of her fusion at C4-5 as well as disk bulging at C3-4." (R. at 431.) The MRIs also showed that Plaintiff had a small herniated disc at L1-L2, but Dr. Rabin stated that Plaintiff's lumbar spine was "unremarkable." (R. at 431, 434.) Dr. Rabin opined that surgery would likely not improve Plaintiff's symptoms, and recommended that she have injections in her cervical spine. (R. at 432.)

On August 14, 2012, Plaintiff was treated by Dr. Yuan Chen, M.D.,[2] for her neck and back pain, relating that she had "throbbing, shooting, stabbing, cramping, and burning" neck pain that was aggravated by prolonged sitting, standing, and walking. (R. at 459.) She described her lower back pain as "throbbing, aching in nature," and also reported that it was aggravated by prolonged walking and going from a seated position to standing. (R. at 459.) Dr. Chen noted that "her physical examination demonstrated significant signs for facet pain" in the neck, and recommended that Plaintiff proceed with cervical medial nerve blocks as treatment. (R. at 459.) Once that was achieved, Dr. Chen suggested that Plaintiff receive corticosteroid injections in her sacroiliac joint to relieve her lower back pain. (R. at 459.) Dr. Chen performed the cervical medial nerve blocks one week later. (R. at 462.) Dr. Chen performed the injections for Plaintiff's lower back pain on September 12, 2012. (R. at 467.)

---

[2] This was Plaintiff's second round of treatment with Dr. Chen, who had treated Plaintiff in 2006 and 2007, after her first motor vehicle accident. At that time, Dr. Chen performed several cervical epidural steroid injections, one lumbar epidural steroid injection, and a cervical medial nerve block. (R. at 1005-1017.)

3

In October 2013, Plaintiff had MRIs of her back performed. Her cervical spine showed "posterior disc protrusion" at C3-C4, "disc bulging" at C4-C5, and "postsurgical changes of anterior fusion" at C5-C6. (R. at 608.) Over all, the MRI showed "no significant change" from the May 2012 MRI, and the degenerative changes and borderline canal stenosis at C3-C4 and C4-C5 were stable. (R. at 608.) The MRI of Plaintiff's lumbar spine showed "mild disc bulging without spinal stenosis or neural compromise at L1-L2," but not significant change from Plaintiff's May 2012 MRI. (R. at 610.)

On March 10, 2014, Plaintiff met with Dr. Mohammad A. Khan, M.D., where she described her lumbar pain as 9 out of 10, with shooting pain, numbness, and tingling radiating down her right leg. (R. at 613.) She reported that walking, standing, lifting, leaning forward, sneezing, and coughing all made the pain worse. (R.at 613.) Plaintiff also complained of shooting neck pain, tingling, and numbness associated with her neck pain, and noted that the pain radiated down her shoulder and arm; using her arm and turning her neck made the pain worse. (R.at 614.) Dr. Khan noted "severe tenderness" in Plaintiff's neck and back, and diagnosed Plaintiff with chronic neck and back pain, with lumbar radiculitis, sacroiliac and facet joint arthropathy, cervical radiculitis, and cervical facet joint arthropathy. (R. at 614-616.) However, Dr. Khan noted that the MRIs had "very little findings." (R. at 616.) Following his examination, Dr. Khan performed a facet joint injection at L3-L4, L4-L5, and L5-S1, and a bilateral sacroiliac joint injection. (R. at 617-620.)

Plaintiff had additional MRIs on July 10, 2014. The MRI of the cervical spine showed moderate disc protrusion at C3-C4 with mild encroachment upon the ventral side of the cord, and "mild cord flattening/posterior cord displacement." (R. at 862.) At C4-C5, the MRI showed shallow right paracentral disc protrusion, leading to mild cord impingement, and "[a]t least

4

mild/moderate right and milder left C5 foraminal narrowing." (R. at 863.) An MRI of the Plaintiff's lumbar spine revealed degenerative disc change at L1-L2 with shallow disc protrusion. (R. at 865.)

Running as an undercurrent to all of this treatment are progress notes from Dr. Sean Rardin, Plaintiff's primary care physician, which show a long history of neck and back problems. For example, on March 7, 2012, Plaintiff complained of getting "'stuck' where she cannot move her neck and torso after certain movements for up to 45 minutes." (R. at 505.) On September 26, 2012, Plaintiff presented to Dr. Rardin with "severe cervical and thoracic/lumbar back pain . . . [that] goes down her right leg and right foot at times." (R. at 502.) Plaintiff reported that her pain was getting worse, despite the injections with Dr. Chen, and that sitting or standing for prolonged periods worsened the pain; Dr. Rardin suggested that Plaintiff consider a leave from nursing school – which she was attending at the time – "to concentrate on her health which has worsened." (R. at 502-03.) At the following appointment with Dr. Rardin, on January 11, 2013, Plaintiff stated that her pain and had not improved, and that she had taken a leave of absence from nursing school and was considering pursuing a claim for disability. (R. at 501.) On April 1, 2013, Dr. Rardin noted that "[Plaintiff] has tried to finish school and continue working but has found her neck and back pain to be too severe," and that she "visited with neurosurgery and was discouraged from continuing school and work." (R. at 499.) On May 3, 2013, Dr. Rardin wrote that Plaintiff's back and neck pain were unchanged. (R. at 835.) In October of that year, Plaintiff claimed that she had "developed intermittent numbness in both hand[s]," and continued to have radiation of lumbar pain into her right leg, as well as radiating neck pain into her shoulders; Plaintiff had similar complaints in November 2013, and January 2014. (R. at 829-32.) On April 11, 2014, Plaintiff reported that her back and neck pain were getting worse, and had

5

deteriorated after her injections with Dr. Khan in March 2014. (R. at 827.) Dr. Rardin noted that "[i]t's getting to a point she is pretty much taking pain meds and sleeping to get through the day." (R.at 827.) The last appointment with Dr. Rardin in the record is August 29, 2014, wherein Plaintiff noted that Dr. Khan's injections had not improved her symptoms.

Dr. Rardin also completed a Physical Residual Functional Capacity Questionnaire on November 7, 2014. Dr. Rardin wrote that Plaintiff suffered from cervical and lumbar disc disease, chronic neck and back pain, and neuropathy. (R. at 998.) He opined that Plaintiff was incapable of tolerating "low stress" jobs, noting that Plaintiff's "pain, focus and fatigue prevent her from regular work." (R. at 999.) Dr. Rardin stated that Plaintiff could sit for no more than 30 minutes at a time, and stand for no more than 15 minutes at a time; Dr. Rardin also limited Plaintiff to no more than two hours of cumulative sitting, standing, or walking in an eight-hour working day. (R. at 999-1000.) According to Dr. Rardin, Plaintiff would need to take daily unscheduled breaks. (R. at 1000.) Finally, Dr. Rardin reported that Plaintiff would have certain postural and lifting limitations. (R. at 1000-1001.)

The record also contains medical opinion evidence. First, Dr. Afiz A. Taiwo, M.D., provided a consultative examination for the Bureau of Disability Determination Services on May 25, 2013. Dr. Taiwo noted that Plaintiff "appear[ed] to be in significant pain," and noted that Plaintiff "walk[ed] with an antalgic gaint . . . she is limping on her right lower extremity." (R. at 521.) He diagnosed Plaintiff with "certical osteoarthritis status post surgery with still having significant cervical radiculopathy," "low back pain due to lumbar herniated disc and sciatica, which is severe," and "right lower extremity weakness." (R. at 523.)

Second, Dr. Kimberly Middleton, M.D., issued an Independent Medical Exam on February 11, 2014. Dr. Middleton did not note any issues with Plaintiff's gait, and found normal

6

range of motion in Plaintiff's neck and back, despite tenderness and complaints of pain. (R. at 572.) Dr. Middleton diagnosed Plaintiff with cervicalgia, cervical disc disease status post fusion, lumbago, lumbar disc disease, and right lower extremity radiculopathy, and opined that Plaintiff should never lift more than 20 pounds, but could frequently carry, push, and pull 10 ponuds or less. (R. at 573.)

### III. The ALJ's Decision

The ALJ issued a written decision on January 15, 2015, following the five-step analytical process required by 20 C.F.R. § 416.920. (R. 22-35.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 31, 2013. (R. at 34.) At step two, the ALJ concluded that Plaintiff's severe impairments were degenerative disc disease of the cervical and lumbar spine, depression, and anxiety.[3] (R. 15-19.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (R. 25.) The ALJ next found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform the light work, as defined in 20 C.F.R. § 416.967(b), with certain postural and environmental limitations. (R. 27.) At step four, the ALJ concluded that Plaintiff was not capable of performing her past relevant work as a licensed practical nurse. (R.32.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, given Plaintiff's age, education, work experience, and residual functional capacity. (R.at 33.) These findings led to the conclusion that Plaintiff was not disabled as defined by the Act. (R. at 34.)

### IV. Standard of Review

---

[3] Plaintiff's appeal only focuses on Plaintiff's physical impairments, and the Court will only discuss those in this opinion.

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). "An ALJ has a duty to fully develop the record before drawing any conclusions…and must adequately articulate his analysis so that we can follow his reasoning." *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

## V. The ALJ Failed to Support His Weighing of the Opinion Evidence

Plaintiff argues that ALJ failed to apply the regulatory factors that govern the weighing of opinion evidence. Social Security regulations direct an ALJ to evaluate each medical opinion in the record. 20 C.F.R. § 416.927(c). Because of a treating physician's greater familiarity with the claimant's condition and the progression of his impairments, the opinion of a claimant's treating physician is entitled to controlling weight as long as it is supported by medical findings and is not inconsistent with other substantial evidence in the record.[4] 20 C.F.R. § 416.927(c)(2); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016); *Clifford v. Apfel*, 227 F.3d at 870. An ALJ must provide "good reasons" for how much weight he gives to a treating source's medical opinion. See *Collins v. Astrue*, 324 Fed. Appx. 516, 520 (7th Cir. 2009); 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our…decisions for the weight we give your treating source's opinion."). When an ALJ decides for "good reasons" not to give controlling weight to a treating physician's opinion, he must determine what weight to give to it and other available medical opinions in accordance with a series of factors, including the length, nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; the supportability of the opinion; and the consistency of the physician's opinion with the record as a whole. *Yurt v. Colvin*, 758 F.3d at 860; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); see 20 C.F.R. § 416.927(c)(2)-(6). In general, a physician who has personally examined the claimant is given more credence than one who has only reviewed the medical file. 20 C.F.R. § 416.927(c)(1). An ALJ must provide "sound explanation" for the weight he gives each opinion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If he does not discuss each factor explicitly,

---

[4] A recent change to the Administration's regulation regarding weighing opinion evidence will eliminate this rule, commonly known as the "treating physician rule," for new claims filed on or after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844, 5848–49 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416). For the purposes of this appeal, however, the prior version of the regulation applies.

9

the ALJ should demonstrate that he is aware of and has considered the relevant factors. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

Here, the ALJ chose not to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Rardin. The ALJ accorded Dr. Rardin's opinion "little weight" because "[h]is limitations are inconsistent with his treatment notes from May 2013 through June 2014," wherein Plaintiff "demonstrated normal strength and sensation and ambulated without difficulty." (R. at 31-32.) The ALJ also found that Dr. Rardin's limitations were inconsistent with the Plaintiff's office visit on May 24, 2014, which showed normal range of motion of the neck and back. (R. at 32.)

Here, the ALJ failed to articulate "good reasons" for failing to give Dr. Rardin's opinion controlling weight. First, Dr. Rardin's treatment notes are, in fact, consistent with his opinion. The ALJ took a myopic and highly selective view of Dr. Rardin's notes in reaching his opinion. The record demonstrates that Plaintiff regularly complained of increasing neck and back pain, as well as significant radiculopathy over the course of several years of treatment. Plaintiff's alleged onset date of disability is March 31, 2013.[5] Only a few months before her alleged onset date, it was Dr. Rardin who suggested that Plaintiff take a leave of absence from nursing school to focus on her health. Moreover, on April 1, 2013, the day after her alleged onset date, Dr. Rardin noted that "[Plaintiff] has tried to finish school and continue working but has found her neck and back pain to be too severe," and that she "visited with neurosurgery and was discouraged from continuing school and work." (R. at 499.) Plaintiff's complaints of debilitating neck and back pain continued well into 2014. As such, the *only* reason articulated by the ALJ to support his decision to give Dr. Rardin's opinion "little weight" is not supported by the record as a whole, and cannot be a "good reason" for the ALJ's assignment of weight.

---

[5] Plaintiff amended her alleged onset date following the hearing. (R. at 286.)

Even if the Court were inclined to find that the ALJ had articulated a "good reason" for giving Dr. Rardin's opinion less than controlling weight, he failed to discuss all of the factors necessary in determining the weight to be given any opinion evidence. In particular, the ALJ was required to consider the consistency of the treating physician's opinion with the record as a whole. Here, the ALJ neglected to consider anything in the voluminous record other than Dr. Rardin's own treatment notes, much of which is discussed above. He did not consider the several MRIs, the records regarding multiple injections, Plaintiff's history of neck surgery, or the consultative examination by Dr. Taiwo in reaching his opinion, much of which supports Dr. Rardin's opinions regarding Plaintiff's capacity to work.[6] As is often noted by the Seventh Circuit, the ALJ must consider the entire record and cannot simply ignore those portions of the record that do not support the ALJ's findings. *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) ("The ALJ did not, but should have, considered *all* relevant evidence . . . in weighing whether [claimant] is disabled from work as found by [the treating physician]") (emphasis in original).

This case is very similar *Brown v. Colvin*, 845 F.3d 247 (7th Cir. 2016). In *Brown*, the ALJ had not given controlling weight to the plaintiff's treating physician because the opinion was inconsistent with the doctor's treatment notes; the Seventh Circuit held that the ALJ erred, because the treatment notes showed that "[i]n over a dozen individualized assessments spread across five years, [the treating physician] repeatedly referenced the chronic and severe back pain that radiated to [plaintiff's] upper back and hips; that this pain was exacerbated by . . . sitting and standing for prolonged periods." *Id.* at 252-53. The Seventh Circuit also explained why the ALJ's reliance on the treating physician's notes regarding plaintiff's gait, leg raises, and range-

---

[6] Of course, there is also evidence in the record that supports the ALJ's opinion. However, the issue is not whether the ALJ *can* support his decision to afford Dr. Rardin's decision non-controlling weight, but whether he performed the necessary steps to do so.

11

of-motion testing – as the ALJ did in this case – did not constitute evidence that adequately contradicted the doctor's opinion, holding:

> The ALJ emphasized the fact that [the treating physician] frequently observed that [plaintiff] had a stable gait, performed leg raises without incident, and had normal reflexes and mild to moderate range-of-motion limitations. But these observations do nothing to undermine the sitting, resting, and work-absence opinions that the ALJ rejected. [Plaintiff's] gait was observed as she walked, the leg raises were likely performed while she was lying down, and it is unclear how (if at all) the reflexes and range-of-motion tests were relevant to Brown's ability to sit or stand for extended periods. In effect, the ALJ substituted his judgment for [the treating physician's] without explaining *why* [Plaintiff's] activities were inconsistent with [the treating physician's] opinions.

*Id.* at 253.

The ALJ made precisely the same mistake here, relying on range of motion testing and Plaintiff's ability to walk very short distances in the doctor's office, which are not particularly relevant to the Dr. Rardin's opinion regarding Plaintiff's ability to perform light work, as defined in the regulations. Because the ALJ failed to follow the proper steps in weighing Dr. Rardin's opinion, the ALJ's opinion is reversed, and this case is remanded for further proceedings consistent with this opinion.[7]

## **CONCLUSION**

For the reasons discussed above, Plaintiff's motion is granted [dkt. 22], the Commissioner's motion is denied [dkt. 30], and the ALJ's decision is reversed and remanded for further proceedings consistent with this opinion.

---

[7] Because the Court remands on the basis articulated above, it does not reach the other issues raised by the Plaintiff on this appeal.

12

**ENTER: 9/7/17**

_____

**U.S Magistrate Judge, Susan E. Cox**